Faye L. MILLER, Plaintiff,

v.

**CONSOLIDATED ALUMINUM CORPORATION, et al.,**
Defendants.

No. C–2–84–1056.

United States District Court,
S.D. Ohio, E.D.

Jan. 31, 1990.

Frank A. Ray, Columbus, Ohio, for plaintiff.

Gerald P. Ferguson and Edgar A. Strause, Vorys, Sater, Seymour & Pease, Columbus, Ohio, and Jeffrey S. Meyer, Harnischfeger Industries, Inc., Brookfield, Wis., for defendant Harnischfeger Industries, Inc.

OPINION AND ORDER

KINNEARY, District Judge.

This matter comes before the Court to consider the motion of the defendant, Harnischfeger Industries, Inc. (Harnischfeger"), for summary judgment. The plaintiff, Faye L. Miller, seeks damages from defendants Harnischfeger and Dynascan Corporation ("Dynascan") as a result of a fatal accident befalling her husband, Eugene F. Miller, on July 24, 1982. The decedent worked for the Hannibal, Ohio plant of Consolidated Aluminum Corporation

("CONALCO") as an operator of an overhead crane ("Crane # 22") manufactured by Harnischfeger, the radio control system of which was a product of Dynascan.

The Hannibal, Ohio CONALCO plant in which Miller worked receives aluminum from a reduction plant in units called "cruets." The employees dump the metal into a furnace and mix in alloying agents. They skim material from the metal and process it in a "casthouse." The workers pour the molten aluminum into molds to form ingots. They then "scalp" the metal to ensure a smooth surface on the ingot, and from there the metal enters a series of mills to reduce the size of the metal units. Further reduction takes place in the "hot mill." The metal leaves the hot mill in coil form.[1]

Crane # 22 and others like it move the coils from the hot mill into the cold mill "rolling bay" for temporary storage. The coils rest in steel trays which are stacked in the bay. From there, the cranes move the metal to the "cold mill" for final processing. After final processing, CONALCO ships the metal to its customers.[2]

The accident here occurred when the decedent Miller, manipulating the radio control of Crane # 22 in the cold mill rolling bay, lifted a 107,000 pound tray full of aluminum coils. As the tray rose, a coil on it became entangled with an overhanging adjacent stacked tray which caused the lifted tray to move laterally, pinning Miller against a stack of stationary trays.[3]

Faye Miller's First Amended Complaint states claims against Harnischfeger and Dynascan for negligence, strict liability, and breach of warranty. Harnischfeger now moves for summary judgment; it argues that the plaintiff has elicited insufficient evidence to support her claims. In addition, Harnischfeger contends that the plaintiff's claims are time-barred as a result of Ohio's ten year statute of repose for actions arising out of the design, planning, supervision of construction, or construction of improvements to real property. Ohio Rev.Code Ann. § 2305.131 (Anderson 1981).

In considering the defendant's motion, the Court is mindful that summary judgment is appropriate only in limited circumstances. Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The moving party bears the burden of establishing the absence of a genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The United States Supreme Court has held, however, that the standard of summary judgment "mirrors the standard for a directed verdict under Federal Rule of "Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). This is true where, for instance, the dispute turns only on a legal question and the moving party must prevail as a matter of law even if the Court were to resolve all factual disputes in favor of the non-moving party. *See Ross v. Franzen*, 777 F.2d 1216, 1222 (7th Cir.1985); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 225, at 79 (2d ed. 1983).

A summary judgment motion also requires special treatment of the record. The Court "must view the evidence presented through the prism of the substantive evidentiary burden" and determine "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict."

---

**1.** Skeen Dep. at 37–39.

**2.** *Id.* at 39–40.

**3.** Reynolds Dep. at 24–25, 29–30.

*Anderson,* 477 U.S. at 252, 254, 106 S.Ct. at 2512, 2513; *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Nonetheless, in making this determination the Court may not impinge upon the proper function of the jury. Therefore, all of "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. With this standard in mind, the Court will address the defendant's motion for summary judgment. The Court will first consider the threshold issue of the timeliness of the plaintiff's Complaint. Following an analysis of Ohio's statute of repose, the Court will consider the evidence supporting the plaintiff's claims.

## I. OHIO'S STATUTE OF REPOSE

■ Harnischfeger's threshold argument is that Ohio's statute of repose for architects and engineers bars the plaintiff's action against it.[4] The statute of repose provides in part:

> No action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of said injury, shall be brought against any person performing services for or furnishing the design, planning, supervision of construction, or construction of such improvement to real property, more than ten years after the performance or furnishing of such services and construction.

Ohio Rev.Code Ann. § 2305.131 (Anderson 1981).

The defendant claims that the plaintiff's action falls within the terms of the stat-ute's bar. The plaintiff seeks to recover "damages ... for bodily injury or wrongful death" arising from the "defective ... condition" of the crane's construction or radio controller and its "unsafe condition" as a component of an unsafe operating environment.[5] *Id.* Moreover, Harnischfeger "perform[ed] services for" and "furnish[ed] the design, plann[ed], [and] supervis[ed] [the] construction" of the crane. *Id.* Furthermore, the crane constitutes an "improvement to real property." *Id.* Finally, Harnischfeger's services ended at the latest in 1969 when installation of Crane # 22 was complete. The instant suit, brought in 1984, followed the performance or furnishing of Harnischfeger's services by more than ten years. Thus, the defendant concludes that since no cause of action could accrue more than ten years after the installation,[6] the plaintiff cannot maintain her suit.

The plaintiff does not dispute the defendant's reasoning except to argue that the crane was not an "improvement to real property." Walls, pillars, roofs, and so on are undoubtedly improvements. Miller concedes that pieces of machinery can constitute improvements as well, despite the fact that some might argue that machinery and equipment are not part of a building's structure the way a wall is.

The plaintiff, however, does not include all equipment within the category of improvements. Miller defines improvements to include only those items of equipment which would be permanent additions to the property, installed in the course of an extensive (if not complete) fitting or refitting of an entire equipment system which is integral to the function or purpose of a building or other structure. Here, the plaintiff claims that Crane # 22 is not per-

---

4. Since the Court has jurisdiction over this case based on diversity of citizenship, 28 U.S.C. § 1332 (1982 & West Supp.1989), the Court must apply the substantive law of the forum state, which in this case is Ohio, *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

5. The unsafe operating environment consisted of the purportedly flawed design of the floor

plan of the mill, permitting insufficient space between trays. The shortfall in space allegedly was one factor which contributed to the accident.

6. *See Hartford Fire Ins. Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy,* 740 F.2d 1362, 1367 (6th Cir.1984) ("[a]fter ten years," the statute "prohibits any cause from accruing").

manent; CONALCO has the ability to dismantle and remove Crane # 22. Moreover, the installation of the crane was not part of a complete or extensive fitting or retrofitting of the building in which it operates. Also, the crane is not part of an equipment *system;* instead, each crane is an independent unit with a function separate and apart from the other cranes. Thus, the plaintiff concludes that Crane # 22 is not an "improvement to real property."

The only dispute between the parties, then, is the narrow issue here of whether Crane # 22 is an "improvement to real property" within the meaning of section 2305.131, which precludes the accrual of a cause of action ten years after installation.[7] To resolve this issue, the Court must turn first to the language of the relevant statute.[8] If the plain language is unambiguous on its face, then the text of the statute is dispositive.

The statute of repose bars certain kinds of actions against certain persons "arising out of the defective and unsafe condition of an improvement to real property." Ohio Rev.Code Ann. § 2305.131. Unfortunately, the statute itself does not define the term "improvement to real property." Therefore, the Court cannot use the plain language of the text directly to determine whether Crane # 22 is an improvement to real property.

The text, however, indirectly permits the Court to resolve the issue, even though the legislature did not define "improvement to real property" in the statute. In construing this statute, the Court may attribute to the term "improvement to real property" the ordinary meaning of the words comprising it. *See Adair v. Koppers Co.*, 741 F.2d 111, 113 (6th Cir.1984). Ohio has a rule of statutory construction which provides that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." Ohio Rev.Code Ann. § 1.42 (Anderson 1984), *quoted in Adair*, 741 F.2d at 113. Thus, the Court may use the text to ascertain if Crane # 22 is an improvement by determining if it falls within the common sense interpretation of "improvement." *See Adair*, 741 F.2d at 113.

The ordinary meaning of improvement is "permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Id.* at 114 (quoting *Kallas Millwork Corp. v. Square D Co.*, 66 Wis.2d 382, 386, 225 N.W.2d 454, 456–57 (1975)).

The United States Court of Appeals for the Sixth Circuit applied this definition in *Adair v. Koppers Co.*, 741 F.2d 111 (6th Cir.1984). The court isolated four factors to consider when applying this definition: whether the item enhances the value of the real property for the purposes of its intended use, the nature of the improvement, the relationship between the item and the land, and the permanence of the item. *Id.* at 114.

The *Adair* court held that a permanently-emplaced coal handling conveyor was an "improvement to real property," bringing the action based upon a defect of the conveyor under the section 2305.131 limitation.[9] *Adair*, 741 F.2d at 114–16. The court held that the common sense definition of "improvement to real property" encompassed the conveyor after analyzing the four factors comprising the definition of improvements which it had isolated.

First, the coal handling system "enhances the utility of the property," for "the purposes for which it was intended to be used." *Id.* at 115. The coal conveyor caus-

---

7. Since the Ohio Supreme Court has not spoken on this issue, the Court's task here is to "discern how the state courts would respond if confronted with the question." *Hartford Fire Insurance Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy,* 740 F.2d 1362, 1365 (6th Cir.1984).

8. "[T]he starting point for interpreting a statute is the language of the statute itself." *Consumer*

*Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

9. One Ohio court quoted *Adair* with approval and endorsed its definition of improvements. *Fritz v. Otis Elevator Co.,* 48 Ohio App.3d 240, 241, 549 N.E.2d 205 (1988).

ing the injury is the first in a series of conveyors in the plant. Their function is to move coal from railroad cars to the various processing facilities and ultimately to the coke ovens. *Id.* at 114. Without the system of conveyors or a substitute for it, the plant would have no means to move the coal from facility to facility; it could not undertake the sequence of steps necessary to convert the raw material into the final product. Thus, the plant cannot operate without the coal handling system; with the system, however, the plant can function.[10] *See Adair,* 741 F.2d at 114-15. Given its function as a vital link between the various processing facilities, then, the conveyor and the coal handling system enhance the value of the coke plant. *See id.* at 115.

Second, the nature of the improvement also suggests that the conveyor was an improvement, for the conveyor was "an essential component of a larger system." *Id.* at 114. The key inquiry is not whether the malfunctioning part or piece of the machine is itself an improvement, but instead the Court must focus on the whole machine to determine if it is a component of a larger system.[11] *See id.* at 114-15. The conveyor in *Adair* is the first one in a series of conveyors, moving the coal from railroad cars, through processing, to the coke ovens. *Id.* at 114. The conveyors, then, are not connected physically, but each is part of the coal-moving system as a whole.

Third, the relationship between the conveyor and the land supports its inclusion within the category of improvements because the coal handling system as a whole "is essential to the operation of the factory as designed." *Id.* at 115. The purpose of the plant is to put coal through various processes and ultimately to produce coke in an oven. The plant requires some material handling system to move the coal from the

railroad cars, to transport the coal to the processing machines, and ultimately to lift the coal to the entrance of the coke ovens. *See id.* at 115. Without the system, the plant could not function.

Finally, the court concluded that the conveyor is relatively permanent. Although the owner of the plant could have removed the conveyor from the building, "the degree of physical annexation, combined with the length of time the system has remained intact" suggests a permanence which is adequate to bring the conveyor within the category of improvements. *Id.* The defendant showed physical annexation because the installers bolted the conveyor into place in a tunnel. *See id.* The conveyors have operated from the time of their installation in the 1920s; accordingly, the system had remained intact for a long period of time. *Id.*

The four *Adair* factors, elucidating the common sense definition of improvements, suggest that Crane # 22 in the CONALCO plant was an "improvement to real property." First, it enhances the value of the structure for the purposes for which it was intended. The purpose of the plant is to receive aluminum cruets, subject them to various processes, mill the metal into the form of coils, and ship them. *See supra* text accompanying notes 1-2. Cranes move the metal from one processing area to another. In this case, Crane # 22 moves aluminum coils from the "hot mill" processing area to storage in the cold mill rolling bay and from there to subsequent processing areas. *Id.* Crane # 22, then, facilitates the movement of the metal from the hot rolling mill to subsequent processing areas. The other cranes and other metal-moving equipment transport the aluminum between other processing facilities. Accordingly, Crane # 22 is part of the metal-moving system which adds value to the

---

10. One Ohio court upheld summary judgment in favor of the manufacturer of a similar coal handling conveyor under the assumption that the conveyor was an "improvement to real property." *George v. Koppers Co.,* No. 55778, 1989 WL 107164 (Ohio Ct.App. Sept. 14, 1989) (LEXIS, States library, Ohio file).

11. In this case, for instance, operators manipulate Crane # 22 using a hand-held radio control device manufactured by Dynascan. Given that the radio control device that Miller used was a part of Crane # 22, which in turn is "an essential component" of the metal-moving system as a whole, the statute applies to defects in the radio control device as well as the rest of the crane.

CONALCO plant because the system performs the vital function of carrying aluminum from one processing facility to another.

Second, the nature of the improvement also suggests that Crane # 22 is an improvement; the crane was "an essential component of a larger system." *Adair*, 741 F.2d at 114. Crane # 22, then, is one of many such cranes which moves the aluminum units along in the shaping process towards the ultimate destination of the shipping areas. Other equipment moves the metal in its molten form to molds, and from mill to mill for processing. Thus, Crane # 22 is not the only piece of metal-moving equipment, but instead the crane is one crucial link in the system of moving the metal from the point where the plant receives unprocessed metal, through processing, to the loading areas.

Third, the relationship between Crane # 22 and the land suggests that it falls within the category of improvements; it is part of an aluminum-moving system which as a whole "is essential to the operation of the factory as designed." *Id.* at 115. The CONALCO plant receives aluminum in the form of cruets and places it through various processes. The aluminum leaves the plant in coil form. Machinery is necessary to retrieve the aluminum from the vehicles transporting it to the plant, to move the aluminum from one processing machine to the next, and finally to place it back on vehicles for shipment. Without the metal-moving system, the serial processing of the cruets could not take place. Accordingly, Crane # 22 has an intimate tie to the factory, given its role in the aluminum-moving system.

Finally, Crane # 22 is a permanent addition to the cold mill rolling bay. Harnischfeger can show both elements of permanency: physical annexation and a significant time in which the system has remained intact. It can demonstrate physical annexation because of the permanent nature of the attachment between Crane # 22 and the CONALCO plant. Although CONAL-

CO may have the capability to remove the crane if it desired, it is bolted in place, just as the conveyor was affixed in *Adair*. *See id.* Moreover, Crane # 22 has remained intact for a long period of time. Specifically, Crane # 22 has been in place since its installation in 1969. CONALCO installed other cranes at or around the same time. Accordingly, the Court concludes that Crane # 22 is permanent.

In short, Crane # 22 falls within the ordinary meaning of "improvement to real property." Nevertheless, the Court must look at the statute as a whole to determine if it limits, in any way, the ordinary meaning of the expression.[12] Miller might argue, for instance, that other segments of the statute of repose limit the kind of item which could be an "improvement to real property." That is, the Court cannot apply directly the ordinary meaning of the term "improvement to real property" in isolation but must instead employ the ordinary definition of improvements within the confines established by the statute as a whole.

■ Miller could argue, for example, that the title of the statute limits the reach of the term "improvement to real property." Since "Architects, Engineers" is the title of the statute and its heading provides in part "Limitation of actions against architects and engineers," Ohio Rev.Code Ann. § 2305.131 (Anderson 1981), the statute provides repose only to architects, engineers, and their contractors. Improvements to real property, then, are only those items which architects, engineers, and contractors design, plan, or construct. Accordingly, the title suggests that the statute does not protect manufacturers of machinery and machinery would not be within the category of improvements to real property.

The Court, however, rejects such a restrictive interpretation of the statute. The Court notes that titles of statutes may shed light on the legislative intent motivating their enactment. *See, e.g., Columbus Bldg. & Constr. Trades Council v. Moyer*, 163 Ohio St. 189, 200, 126 N.E.2d 429, 435

---

**12.** In construing the statute of repose, the Court may presume that the "entire statute is intended to be effective." Ohio Rev.Code Ann. § 1.47 (Anderson 1984).

(1955); *State v. Glass,* 27 Ohio App.2d 214, 216, 273 N.E.2d 893, 895–96 (1971). Nevertheless, the title is not the same as the statute itself. The text of the statute itself is controlling. When the plain language of the statute is unambiguous, then the title cannot alter its plain meaning. *State ex rel. Murphy v. Athens County Bd. of Elections,* 138 Ohio St. 432, 435, 35 N.E.2d 574, 576 (1941). Only when the text is ambiguous will the title make a difference.

In this case, the plain language of the statute, given the ordinary, well-established meaning of "improvement to real property," is unambiguous. The Court holds that it includes items such as Crane # 22. Thus, although the title might suggest a narrower reading of the statute, Harnischfeger cannot alter the meaning of the statute's terms.

Indeed, "improvement to real property" is so broad a term that the Court can infer a legislative intent to include equipment and machinery which otherwise fits its common sense definition. The general assembly did not choose restrictive interpretations, which would limit the reach of the statute to, for instance, "structural improvements"; and the legislature declined to exclude "equipment" expressly.

Thus, it is possible to infer that the legislature intended to *include* certain items within the reach of the statute because it failed to enact language which would *exclude* such items.[13] This inference, of course, is weak and is not dispositive of the issue. Nevertheless, the Court cannot conclude that the legislature intended to exclude equipment from the scope of the term "improvement to real property" simply from the title of the statute, given the legislature's decision to use this broad expression. Accordingly, the Court draws the provisional conclusion that the expression "improvement to real property" encompasses more than just walls, pillars, and roofs.[14]

Miller could, however, develop a similar argument based on another part of the statute to argue that Crane # 22 is not an "improvement to real property." Specifically, Miller could note that the statute affords repose to those who "design, plan[ ], supervis[e] ... construction, or construct[ ]" improvements to real property. This language clearly suggests that the statute protects those who design and build walls, pillars, roofs, and so on, for these items are normally "constructed." The normal way to refer to equipment, however, is to say it was "built," "manufactured," or "produced" rather than "constructed." The legislature protected those who "design, plan[ ], supervis[e] ... construction, or construct[ ]" as opposed to those who "design, plan, supervise construction, construct, *or manufacture.*" Miller could draw the inference that the legislature intended to exclude manufacturers from the protection of the statute, and since Crane # 22 was "manufactured," Miller could conclude that it cannot be an improvement to real property.

The enumeration of persons protected by the statute gives rise to an inference that the statute does not protect others. *See Foxgord v. Hischemoeller,* 820 F.2d 1030, 1035 (9th Cir.) (where a statute enumerated parties included, a court can infer that the unnamed parties are excluded), *cert. denied,* 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 502 (1987); *see also Developer's Mortgage Co. v. TransOhio Sav. Bank,* 706 F.Supp. 570, 579 n. 25 (S.D.Ohio 1989) (quoting 2A N. Singer, *Statutes and Statutory Construction* § 47.23, at 194 (C.D. Sands ed. 1984) ("enumeration weakens

---

**13.** *See MacNaughton v. United States,* 888 F.2d 418, 421 (6th Cir.1989) (statute covered certain stock because Congress did not enact language which would have excluded it from the scope of the statute).

**14.** Some courts have applied the statute to structural items such as a roof, *Board of Trustees of the Public Library v. Strauss,* No. C–77383 (Ohio Ct.App. Nov. 8, 1978); a bridge, *Miles v. Paulding County Road Commissioners,* 837 F.2d 476 (6th Cir.1988) (dictum) (full-text available on WESTLAW, at p. 28 fn. 6, WESTLAW pagination) (LEXIS, Genfed library, Ctapp file at 14 n. 6, LEXIS pagination); and a pipeline, *Pruitt v. Catalytic, Inc.,* 746 F.2d 1478 (6th Cir.1984), without expressly holding that the items were improvements to real property. These items, though, are undoubtedly improvements to real property.

[the general law] as to things not expressed")).[15] The phrase *"expressio unius est exclusio alterius"* is the Latin expression for this argument. *Id.* (quoting R. Dickerson, *The Interpretation and Application of Statutes* 234 (1975).

The defendant could avoid such an argument by noting that it not only manufactured Crane # 22, but it also "designed" it. Therefore, its conduct would fall within one of the enumerated categories of protected activity even granting such an argument.[16] The Court, however, rejects this argument as a general matter. Although "manufacturing" is the most common term for the activities undertaken by Harnischfeger here, "constructing" is a possible synonym. Like the legislature's choice of the broad expression "improvement to real property," the use of "construct" does not preclude the inclusion of various kinds of persons. The legislature easily could have limited the reach of the law with limiting language. Again, though, this analysis is not dispositive of the issue. The Court may draw the inference that the general assembly intended to exclude limits on the stat-

ute because it did not enact them, but again the inference is weak.

In short, the Court finds that the plain meaning of the term "improvement to real property," given the ordinary meaning of the words comprising it, encompasses the crane which the decedent operated. Even looking at the statute as a whole, the Court does not believe that the general assembly intended to limit the reach of section 2305.-131 to those improvements which are the handiwork or design of architects, engineers, or their contractors. Nor is the Court convinced that the general assembly intended to exclude from the protection of the statute those persons who manufacture equipment if such equipment otherwise falls within the ordinary meaning of "improvement to real property." The broad meanings of "improvement to real property" and "construct" suggest an intention to sweep broadly.

The judicial interpretations of section 2305.131 bolsters the conclusion that "improvement to real property" is a broad term which applies to equipment. The courts are not troubled by the possibility that the general assembly's most immedi-

**15.** The plaintiff makes a similar argument, relying on *Hartford Fire Insurance Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy,* 740 F.2d 1362, 1364 (6th Cir.1984). Miller, like the plaintiff in *Hartford Fire Insurance,* notes that the general assembly was aware of a model statute on this subject before it enacted section 2305.-131. The legislature, however, declined to adopt the model statute, preferring instead the language in section 2305.131. Miller apparently argues that the model statute contains language which would have barred her action, but the formulation actually chosen does not contain such provisions. Thus, she infers that the legislature intended to limit the scope of section 2305.131 and intended to preclude judicial interpretations of it which, like the model statute, would have brought her action within the statute's bar. In other words, Miller argues that the omission of broadening language was intentional; the general assembly intended to exclude that which it did not include, in spite of the absence of exclusionary provisions.

The plaintiff in *Hartford Fire Insurance,* however, presented this kind of argument with regard to a part of the statute not applicable here. The dispute in *Hartford Fire Insurance* concerned the ability to recover damages for the deficiency in the improvement itself, the diminution in its value due to the defect, as well as for the consequential damages consisting of in-

jury to persons and property. *Id.* According to the plaintiff in *Hartford Fire Insurance,* the model statute would bar actions to recover diminution damages but the Ohio statute would not. In this case, though, Miller seeks damages in an action for personal injury which both the Ohio and the model statutes would apparently bar after the applicable time limit passed.

Therefore, the plaintiff can only argue that the legislature failed to incorporate language in section 2305.131, that would include companies like Harnischfeger. *Miller,* however, *fails to* inform the Court which language the general assembly decided not to adopt. Her reliance on *Hartford Fire Insurance* as being directly analogous suggests that she relies on the same language as the plaintiff in that case, but such language is not applicable here. Accordingly, the plaintiff's argument is unpersuasive.

**16.** The plaintiff could reply that the statute does not even include those who "design" such equipment either, despite the inclusion of the term in the statute. The title of the statute may suggest that the legislature intended only to protect designers who are architects, engineers, builders, and their contractors, that is, those who design walls, pillars, and roofs, not those who design industrial equipment. The Court, however, has already refuted this argument.

ate goal may have been to protect those who are in the construction business. Indeed, the courts have reasonably drawn support from breadth of the term "improvement to real property" to include within that category several kinds of machinery.

For instance, the courts have held that an elevator is an "improvement to real property" within the meaning of section 2305.131. *Fritz v. Otis Elevator Co.*, 48 Ohio App.3d 240, 549 N.E.2d 205 (1988); *Jones v. Ohio Bldg. Co.*, 4 Ohio Misc.2d 10, 447 N.E.2d 776 (C.P.1982); *cf. Pinkerman v. Otis Elevator Co.*, Nos. 85 CA 2, 85 CA 21, 1987 WL 15981 (Ohio Ct.App. Aug. 24, 1987) (LEXIS, States library, Ohio file) (holding that the elevator was an improvement to real property but declining on that basis to hold that strict liability was inapplicable). Other courts have applied the statute to cases involving other pieces of equipment, without a specific holding, but under an assumption that the items were improvements. *Ibbitson v. Ramsey Mfg. Co.*, 802 F.2d 458 (6th Cir.1986); *George v. Koppers Co.*, No. 55778, 1989 WL 107164 (Ohio Ct.App. Sept. 14, 1989) (LEXIS, States library, Ohio file) (coal handling conveyor). Finally, the Court has already mentioned that the Sixth Circuit applied section 2305.131 to a coal handling conveyor. *Adair v. Koppers Co.*, 741 F.2d 111 (6th Cir.1984).

Although the Court's attempt at divining the general assembly's intent could not dispose of this issue, the broad language of the plain text and its ordinary meaning, the apparent legislative intent to sweep broadly, and the broad construction given to the statute by the courts are together conclusive on this issue. Therefore, the Court reaches the final conclusion that Crane # 22 is an "improvement to real property." Since the plaintiff brought this claim more than ten years after the crane's installation and this action otherwise falls within the statute, the plaintiff does not have a cause of action against the defendant and summary judgment is, therefore, appropriate.

## II.  EVIDENCE SUPPORTING THE PLAINTIFF'S CLAIMS

The second argument raised by Harnischfeger is that Miller elicited insuffi-

cient evidence to support her claims. It therefore seeks summary judgment on the claims against it. Given that the Court holds that the Ohio statute of repose bars the plaintiff's action, the Court need not reach this issue.

WHEREUPON, upon consideration and being duly advised, the Court finds the defendant's motion for summary judgment to be meritorious, and it is, therefore, GRANTED. All claims pending against Harnischfeger are hereby DISMISSED with prejudice.

IT IS SO ORDERED.