Sheila **PHILLIPS**, individually and Sheila Phillips as next friend of William Phillips and Brandon Mohammed, Plaintiffs,

v.

The **LANGSTON CORPORATION,** Defendant.

No. Civ. 98–40381.

United States District Court, E.D. Michigan, Southern Division.

Aug. 4, 1999.

Paul W. Broschay, Zeff & Zeff, Detroit, MI, Sheryl L. Berenbaum, Zeff & Zeff, Detroit, MI, for plaintiffs.

Thomas R. Meagher, Foster, Swift, Lansing, MI, for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Presently before the Court is a motion for summary judgment filed on May 28, 1999 by defendant The Langston Corporation (hereinafter "Langston"). On November 2, 1998, plaintiff Sheila Phillips initiated the instant products liability action. This Court's jurisdiction is premised upon diversity of citizenship pursuant to 28 U.S.C. § 1332. Plaintiff seeks damages for personal injuries sustained while cleaning a Saturn III Flexo Folder Gluer, a machine used to make boxes from cardboard. The machine in question was manufactured, sold and installed by defendant-corporation. Plaintiff also seeks loss of consortium damages on behalf of her children, William Phillips and Brandon Mohammed. On July 23, 1999, plaintiff filed her response to defendant's motion. A reply brief was submitted by defendant on August 2, 1999.[1]

For the reasons set forth hereinbelow, the Court will grant defendant's motion for summary judgment.

## I. Factual Background

On May 22, 1998, plaintiff Sheila Phillips was injured when her ponytail was caught between the rolls of a Saturn III Flexo Folder Gluer (hereinafter "Saturn III" or "machine"). The incident occurred at the Georgia–Pacific facility located in Milan, Michigan (hereinafter the "facility"). As mentioned above, the machine in question is used to create boxes from cardboard.

Specifically, the machine takes a blank sheet of cardboard, cuts it to shape, adds print and glues it to form a box. The Saturn III requires hot and cold water as well as a compressed air line.

For reasons discussed more fully below, plaintiff emphasizes that the machine is not part of any system requiring a conveyor. Plaintiff also points out that no other machines depend upon the Saturn III for their operations. The Saturn III was manufactured, sold, and installed by defendant Langston at the Georgia–Pacific facility in 1989. Installation was completed by early 1990. See Aff. of Walter Avis, attached as Exh. 1 to defendant's brief in support of motion for summary judgment.

In September of 1989, defendant Langston submitted a 19–page proposal to Georgia–Pacific for the sale of the Saturn III at a price of approximately $1.5 million. See Tab A to defendant's brief. Defendant also submitted a separate proposal for installation at an additional cost of $46,000. See Tab B to defendant's brief. Installation of the Saturn III required, inter alia, the digging of pits, trenches, and drains into the existing floor of the facility. See Exh. 1, ¶ 8 to defendant's brief. The installation also required modification of the facility in the form of separate power sources, air lines, hot water lines, and cold water lines. See Exh. 1, ¶ 9 to defendant's brief. Additionally, during installation, defendant performed all necessary grouting, bolting, mechanical, electrical and pipe-fitting connections, as well as other necessary tasks. See Exh. 1, ¶ 9 to defendant's brief.

It is undisputed that the facility accepted defendant's proposals and ordered the Saturn III tailored to Georgia–Pacific's specific needs. See Tabs C, D & E to defendant's brief. By January 12, 1990, the installation of Saturn III was completed except for a die cutter and stripper.

---

1. Defendant's motion for summary judgment will be decided on the briefs submitted by the respective parties and without the necessity for oral argument pursuant to L.R. 7.1(e)(2) (E.D.Mich.1998).

These items were delivered in February of 1990. *See* Exh. 1 & Tab F to defendant's brief.

Defendant has proffered testimony of Georgia–Pacific personnel establishing that the Saturn III was first put to use in early 1990. *See* Depo. of David F. Adams, Maintenance Manager at Georgia–Pacific facility, attached to defendant's brief, p. 15. The machine in question is and was at all times relevant to this action bolted to the floor of the facility. *See* Depo. of Thomas Wayne Coble, Production Manager at Georgia–Pacific facility, pp. 20–22; *see also* Adams Depo., p. 36. The business of the Georgia–Pacific facility is the manufacture of corrugated containers. *See* Coble Depo. p. 19.

Plaintiff Sheila Phillips initiated the instant action on November 2, 1998 with the filing of her complaint. On November 4, 1998, this Court entered orders appointing plaintiff Phillips as next friend of her children, William Phillips and Brandon Mohammed. In the complaint, plaintiff alleges various design defects, including failure to warn, as well as breach of the implied warranty of merchantability. As mentioned above, plaintiff additionally seeks loss of consortium damages on behalf of her children.

## II. Legal Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties."

*Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (citation omitted). In evaluating a motion for summary judgment, the Court must view the evidence in a light most favorable to the nonmovant, as well as draw all reasonable inferences in the nonmovant's favor. *See U.S. v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). This burden "may be discharged by showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed. R.Civ.Proc. 56(e); *Gregg,* 801 F.2d at 861. To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See Catrett,* 477 U.S. at 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## III. Analysis

■ The sole question presently before this Court and raised by defendant in its

motion for summary judgment is whether plaintiff's claims are barred by Michigan's statute of repose, M.C.L. § 600.5839. This case being premised on diversity of citizenship, the Court is required to apply the substantive law of the state in which it sits. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Accordingly, Michigan law must be applied to determine the viability of plaintiff's claims. "[T]he question whether [a] claim is statutorily barred is one of law for the Court." *Witherspoon v. Guilford,* 203 Mich.App. 240, 243, 511 N.W.2d 720 (1994) (citing *Smith v. Quality Const. Co.,* 200 Mich.App. 297, 299, 503 N.W.2d 753 (1993)).

Defendant argues that Michigan's statute of repose applies in the instant case to preclude plaintiff's claims. Michigan Compiled Laws Section 600.5839 governs "[a]ctions against architects, professional engineers or contractors arising from improvements to real property, actions against land surveyors; limitation of actions; definitions; application of amendments." Pursuant to that Section,

> [n]o person may maintain any action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of such injury, against any state licensed architect or professional engineer performing or furnishing the design or supervision of construction of the improvement, or against any contractor making the improvement, *more than 6 years after the time of occupancy of the completed improvement, use, or acceptance of the improvement,* or 1 year after the defect is discovered or should have been discovered, provided that the defect constitutes the proximate cause of the injury or damage for which the action is brought and is the result of gross negligence on the part of the contractor or licensed

architect or professional engineer. However, no such action shall be maintained more than 10 years after the time of occupancy of the completed improvement, use, or acceptance of the improvement.

M.C.L. § 600.5839(1) (emphasis added). Defendant maintains that the evidence establishes that the Saturn III was installed and began operation in 1990. Since plaintiff's suit was initiated on November 2, 1998, more than 8 years after the "improvement" to the real property in question, defendant contends that plaintiff's claims are barred by the Michigan statute.

In response, plaintiff argues that the Michigan statute of repose is not applicable in the case at hand. Specifically, plaintiff maintains that the machine is not an improvement to real property. According to plaintiff, the Saturn III is but one of several machines installed in the plant which operates independently of other machines in the making of cardboard boxes. Since the applicability of the Michigan statute of repose lies at the crux of dispute between the parties, the Court will now focus upon this important statute.

Section 600.5839, as quoted above, precludes a claim for damages against "any contractor making [an] improvement, more than 6 years after the time of occupancy of the completed improvement, use, or acceptance of the improvement...." M.C.L. § 600.5839(1). The Michigan Supreme Court has held that "[s]tatutes of limitation, along with statutes of repose, are construed to advance the policy [of] prevent[ing] stale claims and reliev[ing] defendants of the protracted fear of litigation." *Frankenmuth Mut. Ins. Co. v. Marlette Homes, Inc.,* 456 Mich. 511, 515, 573 N.W.2d 611, 613 (Mich.1998) (citing *Witherspoon v. Guilford,* 203 Mich.App. 240, 247, 511 N.W.2d 720 (1994)). "The primary rule of statutory construction is to determine and effectuate the intent of the Legislature through reasonable construction in consideration of the purpose of the statute and

the object sought to be accomplished." *Id.* (citing *Gross v. General Motors Corp.,* 448 Mich. 147, 158–159, 528 N.W.2d 707 (1995)). "Where a statute is clear and unambiguous, judicial construction is precluded." *Id.* (*Mino v. McCarthy,* 209 Mich.App. 302, 304, 530 N.W.2d 779 (1995)).

The statute, as originally enacted, precluded certain claims against architects and engineers only. However, in 1985, the section was amended to extend the same protection to contractors. *See Witherspoon,* 203 Mich.App. at 245, 511 N.W.2d 720. A "contractor" is defined by statute as "an individual, corporation, partnership, or other business entity which makes an improvement to real property." M.C.L. § 600.5839(4). The question thus becomes whether defendant Langston is able to satisfy this definition of "contractor." In other words, the question is whether defendant is a corporation which has made "an improvement to real property."

In *Adair v. Koppers Co., Inc.,* 741 F.2d 111 (6th Cir.1984), the U.S. Court of Appeals for the Sixth Circuit examined language from Ohio's analogous statute of repose for designers and builders. *See* 741 F.2d at 112 (discussing Ohio Rev.Code § 2305.131). In *Adair,* the plaintiff brought suit seeking recovery for injuries sustained while operating a coal handling conveyor at a coke plant. The district court had granted summary judgment in favor of defendant-company. The appellate court affirmed the lower court's decision, reasoning that the conveyor was "an improvement to real property" under the Ohio statute. *Id.* at 116.

The *Adair* court noted that "[m]ost courts in other jurisdictions, construing statutes similar to section 2305.131, have adopted a *common sense* interpretation of 'improvement,' rather than employing fixture law." *Id.* at 113 (emphasis added) (citing *Allentown Plaza Associates v. Suburban Propane Gas Corp.,* 43 Md.App. 337, 405 A.2d 326, 331 (1979); *Jones v. Ohio Building Co.,* 4 Ohio Misc.2d 10, 447

N.E.2d 776, 778–79 (C.P.Lucas Cty.1982)). The court explicitly endorsed the following definition of an "improvement" to real property: "[a] permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Id.* at 114 (citing *Kallas Millwork Corp. v. Square D Co.,* 66 Wis.2d 382, 225 N.W.2d 454, 456–57 (1975), quoting Webster's Third International Dictionary (1965), and *Pacific Indemnity Co. v. Thompson–Yaeger, Inc.,* 260 N.W.2d 548 (Minn.1977)). The Sixth Circuit further illuminated the issue when it commented that

> [i]n applying the definition of "improvement," courts consider whether a modification adds to the value of the property for the purposes of its intended use, *see Van Den Hul v. Baltic Farmers Elevator Co.,* 716 F.2d 504, 508 (8th Cir.1983); *Mullis v. Southern Co. Services, Inc.,* 250 Ga. 90, 296 S.E.2d 579, 583 (1982), as well as "the nature of the improvement, its relationship to the land and its occupants, and its permanence," *Allentown Plaza Associates,* 405 A.2d at 332.

*Adair,* 741 F.2d at 114.

In applying the above-stated rules, the *Adair* court found especially important the fact that "[t]he coal handling system, which transports raw material to processing facilities, is essential to the operation of the factory as designed and enhances the utility of the property." *Id.* at 115. "The test for an improvement is not whether an addition can be removed without damage to the land, but if it 'add[s] to the value of the realty, for the purposes for which it was intended to be used.'" *Id.* (quoting *Mullis v. Southern Co. Services Inc.,* 250 Ga. 90, 296 S.E.2d 579, 583 (1982)). The court also made mention of the fact that experts had characterized the conveyor as an essential component of a larger system. *Id.* at 114.

The definition of "improvement" propounded in *Adair* was adopted by the Michigan Court of Appeals in *Pendzsu v. Beazer East, Inc.*, 219 Mich.App. 405, 411, 557 N.W.2d 127, 132 (Mich.App.1996), *appeal denied by* 457 Mich. 871, 586 N.W.2d 918 (Mich.1998) (stating that "We too adopt the reasoning of *Adair* and hold that its analysis is consistent with the purpose of Michigan's statute of repose"). In *Pendzsu,* various plaintiffs sued a contractor, among others, for damages emanating from alleged asbestos-related product liability. The court, however, held that the relining of coke ovens and blast furnaces constituted an "improvement" to real property within the meaning of M.C.L. § 600.5839. As a result, the Michigan statute of repose was held to apply to preclude claims against the contractor which had allegedly supplied the asbestos-containing products. *Id.* at 412–13, 557 N.W.2d 127. In reaching its conclusion that no genuine issue of material fact existed as to whether the relining of the coke ovens and blast furnaces was an "improvement" to real property, the *Pendzsu* court reasoned as follows:

> [t]he fact that the brick that defendant installed in the relining process will eventually wear out is not dispositive. The permanency of a component is merely one of the factors considered in determining whether a modification adds to the value of the realty for the purposes for which it was intended to be used. *Adair,* supra, at pp. 114–115. Like the conveyor system at issue in *Adair,* supra, at p. 115, and the heating-ventilation-air conditioning (HVAC) system at issue in *Fennell [v. John J. Nesbitt, Inc.,* 154 Mich.App. 644, 651, 398 N.W.2d 481], there is no genuine issue of material fact that the relining of the coke ovens and blast furnaces was "integral" to the usefulness of the respective plants. Accordingly, the trial court did not err in applying the statute of repose to plaintiffs' claims against defendant. *Adair,* supra, at p. 115, *Fennell,* supra, at p. 651, 398 N.W.2d 481.

Id. at 412, 557 N.W.2d 127.

■ Defendant further cites *Matthews v. Beloit Corp.*, 807 F.Supp. 1289, 1293 (W.D.Mich.1992) (Quist, J.), in which M.C.L. § 600.5839 was applied to preclude untimely claims against a contractor. The facts in *Matthews* bear a striking resemblance to the facts found in the case at bar. In the prior case, the plaintiff brought suit after his hand became entrapped in a roller of a "stack calender" machine which was incorporated into a papermaking machine. *Id.* at 1290–91. The court specifically held that "*Adair* provides the best method to analyze the issue" whether "a particular structure or machine was an 'improvement to real property.'" *Id.* at 1292. The *Matthews* court identified and applied the following four factors which had previously been enumerated by the Sixth Circuit in *Adair:* "[1] ... whether a modification *adds to the value* of the property for the purposes of its intended use, as well as [2] '*the nature of the improvement,* [3] its *relationship* to the land and its occupants, and [4] its *permanence.*'" *Id.* at 1292 (quoting *Adair,* 741 F.2d at 114) (emphasis added).[2]

**2.** In addition to the cases discussed *supra,* defendant directs this Court's attention to two similar cases decided by federal district courts located in Ohio. *See Miller v. Consol. Aluminum Corp.,* 729 F.Supp. 1154 (S.D.Ohio 1990); *Hall v. Harnischfeger Corp.,* 785 F.Supp. 675 (N.D.Ohio 1991). In *Miller,* a crane operator's widow brought a products liability action against the manufacturer of a crane. Plaintiff's decedent became pinned when a tray full of aluminum coils being lifted by the crane became entangled. *See id.* at 1155. The court applied *Adair* and found that

the crane represented an "improvement to real property" within the meaning of the Ohio statute of repose, Ohio Rev.Code § 2305.131. *See Miller,* 729 F.Supp. at 1161. In *Hall,* plaintiff's leg was crushed by a crane. Plaintiff brought suit against the crane manufacturer. The court held that the crane was an "improvement to real property" within the meaning of the Ohio statute. The *Hall* court likewise relied upon *Adair* in determining that the crane in question "is permanently annexed to the realty and enhances its value." *Id.* at 676. While these courts considered the

■ Applying the four factors of *Adair* to the facts of the instant case, this Court concludes that defendant has satisfied its burden of demonstrating that there is no genuine issue of material fact as to whether the Saturn III is an improvement to the real property in question. With respect to the first factor, it is clear that the machine "adds to the value" of the Georgia–Pacific facility in which it is located. The *Matthews* court's analysis is equally applicable here: "[b]y enabling the company to manufacture paper [in the present case, boxes], the machine enhances the utility of the property and adds to its value just as the coal handling system in *Adair* added to the value of the property." *Id.* at 1292.

■ In her responsive brief, plaintiff argues that this first factor is not met because "[t]he presence of the machine does not enhance the *utility* of the real property itself." Plaintiff's brief, p. 8. The Court disagrees. Just as value was added to the real property when the Saturn III was installed, the utility of the Georgia–Pacific facility was also thereby enhanced. Plaintiff focuses on a portion of the Sixth Circuit's decision in *Adair* wherein the court noted that the conveyor belt was an essential component of a larger system. *See* Plaintiff's brief, p. 8 (quoting *Adair*, 741 F.2d at 114). Although plaintiff has proffered testimony that the Saturn III operates independently of other machines in the plant, this Court does not find that such independence necessarily detracts in any way from the utility which the Saturn III adds to the property in question.

As to the second factor, relating to the nature of the improvement, defendant has submitted testimony supporting its position that the purpose of the Saturn III coincides exactly with the purpose of facility. The machine "turns corrugated [boards] into boxes" and the business of

the Georgia–Pacific plant is to manufacture corrugated containers. *See* Coble Depo., p. 20, attached to defendant's brief in support. Furthermore, it is uncontested that the machine has been used on a daily basis to further the purpose of the facility. *See* Coble Depo., p. 63; Adams Depo. p. 36. Mr. Coble, production manager at the Georgia–Pacific facility, testified that he expects that the machine will continue to be used into the future. *See id.*, p. 22. In the instant case, just as in *Matthews*, the Georgia–Pacific facility could not fully perform its stated function of making boxes without the improvement or "some substitute." *Matthews*, 807 F.Supp. at 1292.

Considering the third factor, the Court finds that the relationship of the item to the land and its occupants, the installation of the Saturn III could not rationally be characterized as an "ordinary repair." As detailed in the factual background discussed *supra*, installation required the digging of pits, trenches, and drains into the existing floor of the facility. In addition, modification of the facility was required in the form of separate power sources, air lines, hot water lines, and cold water lines. The machine is and was at all times relevant *bolted* to the floor and is expected to remain there indefinitely.

■ With respect to the fourth and final factor, permanence, the *Matthews* court's analysis is instructive:

[p]laintiffs would equate "permanent" with "eternal." "Permanent" means that the improvement is to function for a long, indefinite period without regard to unforeseeable conditions. Random House Dictionary of the English Language, (2d ed.1987). This papermaking machine is supported by base plates

---

Ohio statute of repose, and not its Michigan counterpart, these cases nevertheless represent persuasive precedent that the correct test to apply in statute of repose cases is whether the product in question is a "permanent addition to or betterment of real property that

enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Adair*, 741 F.2d at 114.

which are bolted and permanently affixed to the floor. The papermaking machine is not something that can be removed and replaced at will. It is not a simple saw or even a 250 ton press that can be assembled, disassembled, moved, or replaced within a building. *Id.* at 1293. Just as in *Matthews,* the unrebutted testimony of the managers at the Georgia–Pacific facility establishes that the Saturn III has been bolted to the floor in one location since installation in 1990, and, as mentioned, will remain in that location into the indefinite future. *See* Coble Depo. pp. 20–22 and Adams Depo. p. 36. Plaintiff suggests that the machine is not "permanent" because it "could be" moved or removed. However, this argument misconstrues the definition of the term "permanence." As has been shown, that term does *not* mean "eternal," but rather that the "improvement is to function for a long, indefinite period without regard to unforeseeable conditions." *Matthews,* 807 F.Supp. at 1292. The Saturn III Flexo Folder Gluer at issue meets this definition.

In view of the foregoing considerations, this Court holds that the Saturn III, manufactured, sold and installed by defendant-corporation is clearly an "improvement to real property" falling within the meaning of that term as used in M.C.L. § 600.5839. This conclusion is further buttressed by two recent Michigan Court of Appeals decisions also cited by defendant. *See Secchi v. Braibanti Dott,* Case No. 93–001619 (Mich.Ct.App. Jan. 31, 1997) (slip op. attached as Exh. 3 to defendant's brief) and *Conner v. Whiting Corp.,* Case No. 94–426397 (Mich.Ct.App. Dec. 4, 1998) (slip op. attached as Exh. 4 to defendant's brief).

In *Secchi,* the court reversed the trial court's refusal to grant summary disposition premised on Michigan's statute of repose, M.C.L. § 600.5839. Plaintiff brought suit in *Secchi* after he was injured while operating a "macaroni dryer" inside defendant's industrial pasta processing plant. The court, relying on *Adair* and *Pendzsu,*

specifically found that the macaroni dryer was an improvement to the real property in question. The court further held that the pasta-processing line of which the dryer was a part "was not a standardized product; rather it was customized to meet the unique needs of the Prince Macaroni factory." *Secchi,* slip op., p. 3.

In *Conner,* plaintiff's decedent was crushed to death between the bridge wheel assembly of a crane and an access ladder frame. Plaintiff brought suit against the crane manufacturer. The Michigan Court of Appeals reversed the lower court's denial of summary disposition on the basis that the defendant in that case qualified as a "contractor" under the statute of repose. *See* M.C.L. § 600.5839(4). The appellate court re-affirmed that the relevant inquiry under the statute is "whether a defendant 'makes an improvement to real property,'" and not whether defendant "provides a mass-produced product." *Conner,* slip op., p. 2.

Plaintiff attempts to distinguish all the above-cited cases from the situation presented in the case at bar. According to plaintiff, all these cases are factually distinguishable because they all involved products which were "essential" or "integral" to some production process. The Court, however, is not convinced by plaintiff's argument. Although many of the cases discussed did involve one component of a larger system of machines, this factor does not appear to be dispositive. Rather, *Adair* demands a "common sense" approach to determining whether a product is an "improvement to real property." As discussed *supra,* the *Adair* court was very specific in enumerating four factors to be applied in determining this issue.

With respect to the four factors in *Adair*—adding value, the nature of the improvement, its relationship to the land and occupants, and permanence—no factor expressly requires that the machine in question be a component of a larger system. It is apparent that this may be *one consideration* which may be assessed un-

der the second factor of the *Adair* test, i.e., relating to the "nature of the improvement." However, there is no requirement in *Adair* that the machine which allegedly caused injury be linked with other machines. Instead, the appropriate inquiry is whether "a permanent addition to or betterment of real property" has been made. In this case, the Saturn III meets this definition.

■ As a final note, the Court will address plaintiff's additional assertion that Michigan's statute of repose is not meant to prohibit a claim such as the one against defendant Langston in the instant case. Specifically, plaintiff argues that her claim is not "stale" and therefore should be heard. Although plaintiff cites case authority dealing with statutes of limitation, reliance on such cases is misplaced. First, the very purpose of Michigan's statute of repose is "to relieve [contractors] of open-ended liability for defects in workmanship." *Pendzsu*, 219 Mich.App. at · 413–414, 557 N.W.2d 127. Moreover, it is well-settled that statutes of repose may preclude some claims *even before* they arise. *See Frankenmuth Mut. Ins. Co. v. Marlette Homes, Inc.*, 456 Mich. 511, 513 n. 3, 573 N.W.2d 611 (Mich.1998) ("A statute of repose limits the liability of a party by setting a fixed time after the sale or first use of an item beyond which the party will not be held liable for defects in it or injury or damage arising from it. Unlike a statute of limitations, a statute of repose may bar a claim before an injury or damage occurs").

For the reasons set forth, this Court finds that plaintiff's claims are time-barred by the Michigan statute of repose, M.C.L. § 600.5839. Since plaintiff filed her complaint on November 2, 1998, more than 8 years after installation of the Saturn III in early 1990, the statute's 6–year time-limit has been exceeded. Accordingly, defendant's motion for summary judgment must be granted.

*ORDER*

NOW, THEREFORE, IT IS HEREBY ORDERED that defendant's motion for summary judgment filed May 28, 1999 is **GRANTED;**

IT IS FURTHER ORDERED that the hearing on defendant's motion for summary judgment previously scheduled for August 11, 1999 is **CANCELED.**

A judgment in accordance with the above opinion shall be entered forthwith. **SO ORDERED.**