*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOEL BOGORAD and MARILYN BOGORAD,

Plaintiffs-Appellants,

v

OTIS ELEVATOR COMPANY and
GREEKTOWN CASINO, LLC,

Defendants-Appellees.

UNPUBLISHED
November 13, 2024
11:29 AM

No. 364161
Wayne Circuit Court
LC No. 21-013162-NO

Before: JANSEN, P.J., and RICK and PATEL, JJ.

PER CURIAM.

In this premises and product liability action arising from an elevator mishap, plaintiffs, Joel and Marilyn Bogorad, appeal as of right the order granting defendant, Otis Elevator Company, summary disposition under MCR 2.116(C)(10) and the order granting defendant, Greektown Casino, LLC, summary disposition under MCR 2.116(C)(10). We affirm.

## I. BACKGROUND

In May 2021,[1] plaintiffs went to the Greektown Casino for lunch. While leaving the premises, they entered an elevator that they allege malfunctioned and caused injuries to each of them. The incident was captured on surveillance video. Although plaintiffs testified regarding the incident, much of their recollection is contradicted by the video evidence.

The video reveals plaintiffs approached the elevator bank on the third level, with Joel in front and Marilyn following several feet behind. Joel pressed the elevator call button. The elevator doors opened and two passengers exited before Joel stepped into the elevator without incident.

---

[1] Plaintiffs allege in their complaint and brief on appeal that the incident occurred on May 2, 2021, but their medical records and Otis's repair records reflect that the incident occurred on May 3, 2021.

-1-

Marilyn trailed a few feet behind Joel. The video clearly reflects that the elevator doors were closing as Marilyn approached the elevator and *before* she entered the threshold:[2]



As the doors were closing, Marilyn stepped between them, resulting in contact with her right side:



---

[2] Plaintiffs' counsel conceded at the hearing on defendants' motion for summary disposition that the doors were open for the required minimum time period of eight seconds.

The doors opened after the contact. As the doors opened, Marilyn's balance shifted into the left door:



Joel then grabbed Marilyn's wrist, and pulled her into the elevator. The elevator doors remained fully open for approximately 24 seconds. During that time, Joel pushed the buttons on the elevator panel several times before the doors eventually closed. As evidenced by the "3" flashing on the screen in the top right corner of the elevator, the elevator did not move after the doors closed. Joel continued to push buttons on the panel. Eventually, the doors partially opened, closed, partially opened, and closed again. The elevator jolted, started to move, and then stopped. The doors partially opened again. Then the doors closed, and the elevator began to move again. During all of this, Joel pushed buttons on the panel. The elevator stopped again, the doors partially opened, and then closed. The elevator remained stationary, with the doors closed, while plaintiffs waited approximately 16 minutes for help to arrive. A worker used his hands to pry the doors partially open, and plaintiffs were assisted out of the elevator through the partially opened doors.

Otis's repair records reflect that the elevator's doors were knocked off track during the incident and the elevator was stuck on the 5th floor. Otis's mechanic repaired the doors, but the elevator was shut down pending the city's inspection and approval to return the elevator to service.

In March 2007, defendants entered into a contract wherein Otis agreed to install elevators at Greektown Casino and its parking garage and provide "Otis Maintenance," which was "a full preventative maintenance service" that included periodic inspections and safety tests. Otis completed the installation of the subject elevator on December 14, 2007. Approximately two months before plaintiffs' incident, Otis performed an "emergency repair" on the subject elevator's "car door hanger" on March 18, 2021. Less than one month before plaintiff's incident, Otis performed a routine inspection of the subject elevator on April 8, 2021.

On October 1, 2021, plaintiffs filed a complaint against Greektown Casino and Otis Elevator. Plaintiffs asserted claims against both defendants for negligence and premises liability. Plaintiffs asserted claims against Otis Elevator for negligent production and design and gross

negligence in producing an allegedly defective elevator. Finally plaintiffs asserted a claim against Otis for failing to warn of the hazards associated with the elevator doors.

Following discovery, defendants each moved for summary disposition under MCR 2.116(C)(10). Greektown Casino argued that plaintiffs could not establish that an alleged defective condition existed or, if one did exist, that Greektown Casino had actual or constructive notice of the condition. Otis argued that plaintiffs' negligence claim should be dismissed because there was no evidence that Otis breached its common-law duty to maintain and service the subject elevator or that Otis caused the incident or plaintiffs' alleged injuries. Otis further asserted that the statute of repose barred plaintiffs' claims for negligent production and design, gross negligence, and failure to warn. Otis also argued that plaintiffs' premises claim should be dismissed because plaintiffs could not establish that an alleged defective condition existed or, if one did exist, that Otis had actual or constructive notice of the condition. Finally, Otis asserted plaintiffs could not establish their failure-to-warn claim.

In response to Greektown Casino's motion, plaintiffs argued that the elevator was hazardous, and there was a genuine issue of material fact whether Greektown Casino had constructive notice of the potentially hazardous condition. Plaintiffs contended that there was damage to the inside doors that could have been discovered by Greektown Casino through reasonable inspection.[3] Plaintiffs further contended that Greektown Casino knew or should have known that the elevator was defective because Otis repaired the subject elevator's doors less than two months before the incident and inspected the subject elevator less than one month before the incident. In support of their arguments, plaintiffs relied on their own testimony, the surveillance video, their medical records, the contract between Greektown Casino and Otis, and the maintenance records for the subject elevator.

In response to Otis's motion, plaintiffs argued that there was "clear evidence" that the subject elevator was defective because the elevator doors closed on Marilyn while she was in the threshold, the doors closed so hard that they came off the track, and the elevator tried to move

---

[3] Plaintiffs referenced what appear to be dents on the inside door that are visible on the surveillance video:



while the doors were partially ajar. Plaintiffs maintained that their injuries were caused by the malfunctioning elevator that was manufactured, installed, and maintained by Otis. Accordingly, plaintiffs asserted there were questions of fact related to each element of plaintiffs' claims against Otis for negligent production and design, gross negligence, failure to warn, and negligence. In support of their arguments, plaintiffs relied on their own testimony, the surveillance video, their medical records, the contract between Greektown Casino and Otis, and the maintenance records for the subject elevator. Plaintiffs further argued that the statute of repose was inapplicable because the elevator was not an integral component or essential to the operation of Greektown Casino and thus not an "improvement to real property."[4] Plaintiffs further argued that Otis was not a "contractor." However, even if the court held that the statute of repose was applicable, plaintiffs asserted that it did not bar plaintiffs' claims against Otis for premises liability and negligence. Finally, plaintiffs contended that there were material questions of fact regarding their premises-liability claim because there was damage to the inside doors and, based on Otis's prior repair and inspection, Otis knew or should have known that the elevator was defective.

At the hearing for defendants' motions, plaintiffs' counsel conceded that, other than the dents to the inside doors of the subject elevator, there was no evidence of any problem after the April 2021 inspection. And he conceded that there was no evidence that the dents existed before the March 2021 repair to the car door hanger or at the time of the April 2021 inspection. He also conceded that the original elevator car, shaft, and componentry were installed as a fixture to the real estate more than 10 years before the subject incident, but contended that it was not properly maintained.

The court granted summary disposition to both defendants on plaintiffs' premises-liability claim, concluding that there was "no evidence of notice sufficient for a premises owner, and occupier, to be held responsible." The court also held that there was no evidence that Otis was a premises owner or occupier. The court concluded that plaintiffs' claim against Greektown Casino arose out of a condition on the land and thus was a premises-liability claim. Accordingly, the court dismissed plaintiffs' negligence claim against Greektown Casino. Alternatively, the court concluded that dismissal of plaintiffs' negligence and premises-liability claims against Greektown Casino was warranted because there was no evidence to establish proximate causation.

As to the remaining claims against Otis, the court determined that the incident occurred more than 10 years after the production and design of the subject elevator and thus plaintiffs' claims for negligent production and design and gross negligence were barred by the statute of repose. The court further held that there was no genuine issue of material fact Otis breached any duty to warn of the risk of injury and thus dismissed plaintiffs' failure-to-warn claim. The court also concluded, absent expert testimony, there was no genuine issue of material fact that the elevator functioned as it was intended before the doors were knocked off track by the force of Marilyn leaning into them. Accordingly, the court dismissed plaintiffs' negligence claim against Otis because plaintiffs could not establish that Otis breached any duty owed to plaintiffs. Finally,

---

[4] Despite this argument in plaintiffs' brief in response to Otis's motion for summary disposition, plaintiffs admitted Otis's allegation that "[t]he installation of an elevator is an improvement to real property under Michigan law."

the court dismissed plaintiffs' premises claim against Otis, concluding that Otis was not an owner or possessor of the land.

The trial court granted defendants' motions for the reasons stated on the record. This appeal followed.

## II. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition under MCR 2.116(C)(10) is warranted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition under MCR 2.116(C)(10), we must consider the evidence submitted by the parties in the light most favorable to the nonmoving party. *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (cleaned up). Summary disposition under MCR 2.116(C)(10) is proper when, after considering all evidence in the light most favorable to the nonmoving party, the court determines there is no genuine issue of material fact. *Id*. We are "not permitted to assess credibility, or to determine facts" in analyzing whether a genuine issue of material fact exists. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). "Instead, the court's task is to review the record evidence, and all reasonable inferences therefrom, and decide whether a genuine issue of any material fact exists to warrant a trial." *Id*.

## II. GREEKTOWN CASINO

Plaintiff argues that the trial court erred by granting summary disposition to Greektown Casino on plaintiff's negligence and premises-liability claims because there are genuine issues of material fact whether Greektown had constructive notice that the elevator was defective.[5] We disagree.

As a preliminary matter, we clarify that plaintiffs' claim against Greektown Casino clearly sounds in premises-liability. "It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710–711; 742 NW2d 399 (2007). "Courts are not bound by the labels that parties attach to their claims because this would exalt form over substance[.]" *Brendel v Morris*, 345 Mich App 138, 149; 4 NW3d 776 (2023) (cleaned up). "Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land." *Buhalis v Trinity Continuing Care Serv*, 296 Mich App 685, 692; 822 NW2d 254 (2012), overruled in part on other grounds by *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95; 1 NW3d 44 (2023). In a premises-liability case, "liability arises solely from the defendant's duty as an owner, possessor, or occupier of land." *Id*.

---

[5] Because plaintiffs refer to both defendants collectively as "appellees" and do not distinguish between defendants, we assume that plaintiffs' arguments pertain to their negligence and premises-liability claims against both defendants.

"If the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence; this is true even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury." *Id*. In this case, plaintiffs assert that their injuries arose from an allegedly dangerous condition on the land— an allegedly defective elevator. Thus, their claim against Greektown Casino is one of premises liability rather than ordinary negligence.[6]

"All negligence actions, including those based on premises liability, require a plaintiff to prove four essential elements: duty, breach, causation, and harm." *Kandil-Elsayed*, 512 Mich at 110. In premises-liability actions, the duty owed by a defendant depends on whether the plaintiff is classified as a trespasser, licensee, or invitee. *Id*. at 111. In this case, it is undisputed that plaintiffs were invitees[7] and thus Greektown Casino owed plaintiffs a duty "to exercise reasonable care to protect [them] from an unreasonable risk of harm caused by a dangerous condition of the land." *Id*. at 112, quoting *Bertrand v Alan Ford, Inc*, 449 Mich 606, 609; 537 NW2d 185 (1995).

As our Supreme Court explained in *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012):

> The law of premises liability in Michigan has its foundation in two general precepts. First, landowners must act in a reasonable manner to guard against harms that threaten the safety and security of those who enter their land. Second, and as a corollary, landowners are not insurers; that is, they are not charged with guaranteeing the safety of every person who comes onto their land. These principles have been used to establish well-recognized rules governing the rights and responsibilities of both landowners and those who enter their land. Underlying all these principles and rules is the requirement that both the possessors of land and those who come onto it exercise common sense and prudent judgment when confronting hazards on the land.

First, "a valid premises-liability claim requires a showing that (1) there is a condition on the land, and (2) the condition is dangerous." *Tripp v* Baker, 346 Mich App 257, 266; __ NW3d __ (2023). In this case, plaintiffs allege that the dangerous condition was a "defective elevator". The mere fact that plaintiffs were injured does not establish that the elevator was defective. The surveillance video shows the elevator doors open and passengers exit before Joel stepped into the elevator without incident. The surveillance video further reflects that the elevator doors were closing as Marilyn approached the elevator and *before* she entered the threshold. As the doors were closing, Marilyn stepped between them, resulting in contact with the doors as they closed.

---

[6] The trial court stated that plaintiffs' claims against Greektown Casino sounded in premises liability, which plaintiffs' counsel conceded on the record. Plaintiffs do not raise any arguments challenging this issue on appeal.

[7] "An 'invitee' is a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make it safe for the invitee's reception." *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596-597; 614 NW2d 88 (2000) (cleaned up).

The doors opened after the contact, and remained fully open for approximately 24 seconds. Plaintiffs contend that "[t]he doors closed so forcefully on Marilyn that they came off of the tracks and would not properly close[,]" which resulted in plaintiffs being stuck on the elevator for approximately 20 minutes. But plaintiffs have failed to present any evidence establishing that Marilyn's contact with the door was because the elevator was defective, as opposed to operating normally.

Even assuming that plaintiffs could establish a question of fact whether there was a dangerous condition, there is no genuine issue of material fact that Greektown Casino did not have actual or constructive notice of any alleged defect. In addition to warning an invitee about known dangers, an "invitor must inspect the premises to discover any possible dangerous conditions of which the invitor is not aware and take reasonable precautions to protect the invitees from dangers that are foreseeable from use." *Hammack v Lutheran Social Servs*, 211 Mich App 1, 6; 535 NW2d 215 (1995). To establish that an invitor breached its duty, a plaintiff "must demonstrate that the [invitor] had actual or constructive notice of the dangerous condition at issue." *Jeffrey-Moise v Williamsburg Towne Houses Coop, Inc*, 336 Mich App 616, 627; 971 NW2d 716 (2021) (cleaned up). Constructive notice requires evidence "that the hazard was of such a character, *or* had existed for a sufficient time, that a reasonable premises possessor would have discovered it." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 11-12; 890 NW2d 344 (2016) (emphasis added). A defendant may "establish its entitlement to summary disposition by demonstrating that [the] plaintiff failed to present sufficient evidence of notice." *Id*. at 10.

In this case, plaintiffs bore the burden of demonstrating either that Greektown Casino knew of a dangerous condition involving the elevator or should have known that the elevator posed a risk to its users. See *id*. at 10. The record reflects that Otis Elevator repaired the elevator's car door hanger on March 18, 2021 and placed the elevator back in service. The record further reflects that Otis Elevator inspected the elevator on April 8, 2021. But there is no evidence that the elevator malfunctioned after Otis completed its work and before plaintiffs rode in it. Plaintiffs argue that the surveillance video depicts "extensive damage" to the interior elevator doors and thus Greektown Casino had a duty "to repair the doors, or at a minimum, to have them inspected." Although it appears from the video that there may have been a few dents in the upper half of the door, "extensive damage" is an overstatement. Plaintiffs have not provided any evidence as to how long the dents were present or, more importantly, whether the dents affected the elevator doors' performance in any manner. There is no evidence from which a reasonable trier of fact could conclude that Greektown Casino should have requested additional service from Otis Elevator, placed the elevator out of service, or warned riders of potential problems regarding its use. Viewing the evidence in the light most favorable to plaintiffs, they failed to present sufficient evidence that Greektown Casino knew or should have known that riders of the elevator risked injury on the date of the incident. Accordingly, we conclude that the trial court did not err by granting Greektown Casino summary disposition under MCR 2.116(C)(10).

## II. OTIS ELEVATOR

### A. STATUTE OF REPOSE

Plaintiffs argue that the trial court erred by concluding that the statute of repose, MCL 600.5839(1), barred plaintiffs' claims for negligence production and design and gross negligence. We disagree.

The relevant statute of repose, MCL 600.5839(1),[8] provides:

A person shall not maintain an action to recover damages for injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective or unsafe condition of an improvement to real property, or an action for contribution or indemnity for damages sustained as a result of such injury, against any state licensed architect or professional engineer performing or furnishing the design or supervision of construction of the improvement, or against any contractor making the improvement, unless the action is commenced within either of the following periods:

(a) Six years after the time of occupancy of the completed improvement, use, or acceptance of the improvement.

(b) If the defect constitutes the proximate cause of the injury or damage for which the action is brought and is the result of gross negligence on the part of the contractor or licensed architect or professional engineer, 1 year after the defect is discovered or should have been discovered. However, an action to which this subdivision applies shall not be maintained more than 10 years after the time of occupancy of the completed improvement, use, or acceptance of the improvement.

"The purpose of Michigan's statute of repose is to shield architects, engineers, and contractors from stale claims and to relieve them of open-ended liability for defects in workmanship." *Pendzsu v Beazer East, Inc*, 219 Mich App 405, 410; 557 NW2d 127 (1996). A "contractor" is any "individual, corporation, partnership, or other business entity that makes an improvement to real property." MCL 600.5839(3)(a). Plaintiffs do not dispute that Otis is a contractor, but they contend the statute of repose is inapplicable because Otis also manufactured and maintained the subject elevator, which plaintiffs contend "is not an integral component or essential to the operation of Greektown Casino."

The statute of repose does not define the phrase "improvement to real property." In *Pendzsu*, this Court adopted the following definition of "improvement" to real property propounded in *Adair v Koppers Co, Inc*, 741 F 2d 111, 114 (CA 6, 1984): "[a] permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished

---

[8] Plaintiffs mistakenly rely on an earlier version of the statute, which was amended by PA 2011 162, effective January 1, 2012.

from ordinary repairs." *Id*. at 410-411 (stating, "We too adopt the reasoning of *Adair* and hold that its analysis is consistent with the purpose of Michigan's statute of repose"). The test for an improvement is not whether it can be removed without damage to the land, but whether "it adds to the value of the realty, for the purposes for which it was intended to be used." *Id*. at 410–411 (cleaned up). The nature and the permanence of the improvement should also be considered. *Id*. at 411. And if a component of an improvement is an integral part of the improvement to which it belongs, then the component constitutes an improvement to real property. *Id*.

Plaintiffs argue that the statute of repose is not applicable because Otis "did not make a unique improvement to the property."[9] Plaintiffs contend that Greektown Casino "is not in the business of elevators" and "[a]n elevator is not an integral component or essential to the operation of Greektown Casino." In response to Otis's motion for summary disposition, plaintiffs admitted Otis's allegation that an "improvement to real property" is a "permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable[,]" as adopted by this Court in *Pendzsu*. Plaintiffs also admitted Otis's allegation that "[t]he installation of an elevator is an improvement to real property under Michigan law."[10] Further, at the hearing on defendants' motions, plaintiffs' counsel conceded that the original elevator car, shaft, and componentry were installed as a fixture to the real estate more than 10 years before the subject incident. Given these admissions, we conclude that plaintiffs have waived any argument that their claims for negligent production and design and gross negligence are barred by the statute of repose.[11] Accordingly, we

---

[9] In support of their argument, plaintiffs cite *Phillips v Langston Corp*, 59 F Supp 2d 696 (ED Mich, 1999). We do not find plaintiffs' argument persuasive. First, *Phillips* is not binding on this Court. See *Abela v General Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004) ("Although lower federal court decisions may be persuasive, they are not binding on state courts."). Further, *Phillips* does not support plaintiffs' argument. The defendant in *Phillips* manufactured, sold, and installed a machine used to make boxes from cardboard. *Phillips*, 59 F Supp 2d at 698. Applying all of the *Adair* factors that were adopted by this Court in *Pendzsu*, the *Phillips* Court concluded that the subject machine was an improvement to real property and thus the plaintiff's claim was barred by the statute of repose. *Id*. at 703-705. *Phillips* makes no mention of "a standardized product" versus "a unique improvement."

[10] Otis cited *Pendzsu*, 219 Mich App at 410 in support of this allegation.

[11] See *Holmes v Holmes*, 281 Mich App 575, 587-588; 760 NW2d 300 (2008) ("A party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court.") (cleaned up); *LeFever v Matthews*, 336 Mich App 651, 670 n 3; 971 NW2d 672 (2021) ("To allow a party to assign error on appeal to something that he or she deemed proper in the lower court would be to permit that party to harbor error as an appellate parachute."); *LME v ARS*, 261 Mich App 273, 277; 680 NW2d 902 (2004) ("waiver is the intentional abandonment of a known right and it extinguishes any error.").

-10-

affirm the trial court's grant of summary disposition to Otis on plaintiffs' claims for negligent production and design and gross negligence.[12]

## B.  NEGLIGENCE

Plaintiffs further argue that the trial court erred by granting summary disposition to Otis on plaintiffs' negligence claim.  We disagree.

Plaintiffs argue that, under the maintenance contract, Otis had a duty to keep the elevator in reasonable repair and safe for plaintiffs' use.  Otis does not dispute this obligation.  But plaintiffs have failed to establish a genuine issue of material fact whether Otis breached its duty.  Plaintiffs simply assert that Otis's breach is "evidenced by the elevator closing while Marilyn was in the threshold, the elevator not immediately retracting, and the elevator closing with enough force to cause the door of the elevator to come off of the track."  "No presumption of negligence is raised by the mere happening of an accident or proof of injury resulting therefrom."  *Daigneau v Young*, 349 Mich 632, 635; 85 NW2d 88 (1957) (cleaned up).  The record reflects that Otis Elevator repaired the elevator's car door hanger on March 18, 2021 and placed the elevator back in service.  The record further reflects that Otis Elevator inspected the elevator on April 8, 2021.  There is no evidence that the elevator malfunctioned after Otis completed its work.  Further, there is no evidence that Marilyn's contact with the door was because the elevator was not in reasonable repair, as opposed to operating normally.  Accordingly, we conclude that the trial court did not err by granting summary disposition to Otis on plaintiffs' negligence claim.

## C.  FAILURE TO WARN

Plaintiffs also argue that the trial court erred by granting summary disposition to Otis on plaintiffs' failure-to-warn claim.  We disagree.

In their complaint, plaintiffs alleged that "Otis knew of should have known of the risk of injury with respect to the foreseeable use and/or misuse of its product."  Plaintiffs maintained that "Otis knew or should have known of the risk of injury caused by the subject elevator doors closing rapidly."  Plaintiffs asserted that "Otis did not provide effective communication of adequate, accurate information essential to safe use of the product."  Plaintiffs alleged that Otis breached its duty by failing to warn that (1) "the subject elevator doors may close even when someone is in the

---

[12] Notwithstanding plaintiffs' waiver, we are not persuaded by plaintiffs' argument that "[a]n elevator is not an integral component or essential to the operation of Greektown Casino."  The subject elevator transports patrons to and from the multiple levels in the parking structure, which is connected to the casino.  Joel testified that he parked his vehicle on level two of the structure, and he and Marilyn had to use an elevator to enter the building on level three.  Reasonable minds cannot differ that the elevator is a permanent addition to the building that enhances the building's capital value and is designed to make the property more useful.  See *Pendzsu*, 219 Mich App at 410.  We conclude that there is no genuine issue of material fact that the elevator is an "improvement to real property" and thus plaintiffs' claims for negligent design and production and gross negligence are barred by the statute of repose.

-11-

way;" (2) "the subject elevator doors close with enough force to cause harm to Plaintiffs;" and (3) "the subject elevator jerks when the doors are not closed properly[.]"

Plaintiffs' failure-to-warn claim against Otis is governed by Chapter 29 of the Revised Judicature Act. See *Greene v AP Products, Ltd*, 475 Mich 502, 507–508; 717 NW2d 855 (2006) (stating that a defendant's duty to warn in a products-liability action is governed by Chapter 29 of the Revised Judicature Act). Under MCL 600.2948(2), "[a] defendant is not liable for failure to warn of a material risk that is or should be obvious to a reasonably prudent product user or a material risk that is or should be a matter of common knowledge to persons in the same or similar position as the person upon whose injury or death the claim is based in a product liability action." MCL 600.2948(2). A " 'material risk' is an important or significant exposure to the chance of injury or loss." *Greene*, 475 Mich at 510.

On the record before us, we conclude that the trial court did not err by holding that Otis owed plaintiffs no duty to warn. It is common knowledge that an elevator's doors may continue to close even when someone is in the way. It is also common knowledge that an elevator's doors will close with enough force to cause harm to a person. In fact, Marilyn testified that she would not have walked through the elevator doors if they had started to close because she knew that could cause a serious injury if the doors continued to close. Thus, a person in a position similar to that of Marilyn's should recognize that stepping through elevator doors while they are closing could lead to injury. Further, it is common knowledge that an elevator may not operate normally if its doors do not properly close. Accordingly, the trial court did not err by granting summary disposition to Otis on plaintiffs' failure-to-warn claim.

## D. PREMISES LIABILITY

Finally, plaintiffs argue that the trial court erred by granting summary disposition to Otis on plaintiffs' premises-liability claim. We disagree.

In a premises-liability case, "liability arises solely from the defendant's duty as an owner, possessor, or occupier of land." *Buhalis*, 296 Mich App at 692. This rule is based on the principle that a party " 'in possession is in a position of control, and normally best able to prevent any harm to others.' " *Merritt v Nickelson*, 407 Mich 544, 552; 287 NW2d 178 (1980), quoting Prosser, Torts (4th ed.), § 57, p. 351. "It is a general proposition that liability for an injury due to defective premises ordinarily depends upon power to prevent the injury and therefore rests primarily upon him who has control and possession." *Kubczak v Chem Bank & Trust Co*, 456 Mich 653, 662; 575 NW2d 745 (1998) (cleaned up). The evidence reflects that Greektown Casino, not Otis, had

possession and control of the premises at the time of the subject incident. Accordingly, the trial court did not err by granting summary disposition in favor of Otis on plaintiffs' premises-liability claim.[13]

Affirmed.

/s/ Kathleen Jansen
/s/ Michelle M. Rick
/s/ Sima G. Patel

---

[13] Further, as discussed above, there is no evidence that the elevator malfunctioned after Otis completed its work and before plaintiffs rode in it. And plaintiffs failed to provide any evidence as to how long the dents were present or whether the dents affected the elevator doors' performance in any manner. Viewing the evidence in the light most favorable to plaintiffs, they have failed to establish that Otis knew or should have known that riders of the elevator risked injury on the date of the incident.